232 N.W.2d 832 (1975)
In the Matter of the ADOPTION OF Dalyn Cordell CHRISTOFFERSON, and Michael Martin Christofferson.
Jerry CHRISTOFFERSON, Appellant,
v.
Michael E. McCANN, Respondent.
No. 11442.
Supreme Court of South Dakota.
August 28, 1975.
Alan F. Glover, Brookings, for appellant.
T. F. Martin of McCann, Martin & Mickelson, Brookings, for respondent.
*833 DUNN, Chief Justice.
This is an appeal from an adoption proceeding instituted in the District County Court, Seventh District, Brookings County, South Dakota. The respondent, Michael E. McCann, petitioned to adopt Dalyn Cordell Christofferson and Michael Martin Christofferson, minor children of Judy K. McCann, wife of respondent, and Jerry C. Christofferson, appellant, natural father of the minor children and former husband of Judy K. McCann. Appellant did not consent to the adoption, and in this action respondent claimed that appellant had abandoned the children as defined by SDCL 25-6-4(2). The appeal is from a judgment granting the adoption in which appellant contends that the evidence was insufficient to establish abandonment. We affirm.
The evidence indicates that appellant remarried shortly after the divorce on May 11, 1972, and assumed full support of his new wife and her three children. After the divorce was granted, appellant made payments of support on two occasions: (1) Payments were made after the June 9, 1972 hearing to avoid a sixty-day jail sentence for contempt, and (2) Further payments were made after appellant was arrested in the State of Montana under a reciprocal warrant. Total payments made by the appellant from May 1972 until October 1973, were approximately $600 pursuant to the contempt order and the reciprocal support order. At the time of the adoption hearing on October 17, 1973, appellant was in arrears in his child support in the approximate amount of $3,620. Evidence was obtained from the appellant that he was gainfully employed during most of this period, having paid tax on an income of $7,000 in 1972; that he had been a partner in a business in Rapid City from March 1973, to the date of hearing, during which time his earnings were $700 per month; and, further, that he was entitled to one-half of $15,000 of undivided profits in the firm.
After the contempt hearing in Brookings on June 9, 1972, appellant left the area and the state without advising anyone of his whereabouts, and it was only after considerable investigation and the filing of a reciprocal support action that he was found in the State of Montana.
Following the divorce in May 1972, the appellant only visited the children onceon October 15, 1973at about the time the adoption hearing was held. During this period he wrote one letter and one card to the children; talked to them by phone once and sent gifts on Christmas and birthdays (one birthday gift was a check for $25 which was returned marked, "ACCOUNT CLOSED").
The appellant testified that he loved his children and had never intended to abandon them; that he did not pay child support because of his erratic employment and because of the fact that he had remarried on August 31, 1972, and had assumed the full obligation of supporting his new wife and her three children; that he had communications with or pertaining to his children, but that he had been denied visitation rights by Judy McCann; that he had left South Dakota without leaving a forwarding address to avoid harassment in his employment by Judy McCann; and, finally, that Judy McCann had informed him on some date in 1973 that she was not seeking any further support from him.
Judy McCann denied that she had ever interfered with visitation rights in Brookings, but that she had objected to his taking the children to Montana. She also denied that she had ever harassed appellant in his employment, or that she had ever agreed to forego support for the children. She did testify that following her association with Michael McCann she had told appellant that she would take no further court action to collect support. Judy McCann did indicate that appellant had sent a card and a letter and that he had sent gifts at Christmas and on birthdays. Evidence of appellant's considerable earnings during the period in question was adduced under cross-examination.
*834 We last dealt with the question of abandonment under this statute in Mastrovich v. Mavric, 1939, 66 S.D. 577, 287 N.W. 97. This standard was established:
"To constitute abandonment under our code it must appear by clear and convincing evidence that there has been by the parents a giving-up or total desertion of the minor child. In other words, there must be shown an absolute relinquishment of the custody and control of the minor and thus the laying aside by the parents of all care for it." 66 S.D. at 579. 287 N.W. at 97-98.
This case also established that abandonment was a question of fact for the trial court. Appellant here questions the legal sufficiency of the evidence and principally argues that there was no showing of intent to abandon on his part. We agree that it is necessary to establish an intent to abandon and to relinquish parental obligations. An involuntary inability to assume a parental role will not constitute abandonment. Moody v. Voorhies, 1970, 257 Or. 105, 475 P.2d 579. Most courts have interpreted similar statutes as requiring an intentional abandonment. In re Adoption of Snellgrose, 1967, 425 Pa. 258, 228 A.2d 764; Pitzenberger v. Schnack, 1932, 215 Iowa 466, 245 N.W. 713; In re Anderson, 1933, 189 Minn. 85, 248 N.W. 657. As is generally the case, intent to abandon may be inferred from conduct. Moreau v. Buchholz, 1951, 124 Colo. 302, 236 P.2d 540.
Substantial evidence of appellant's failure to support his children, although gainfully employed, appears in this record. While this failure does not conclusively establish abandonment, it is a strong factor in such a determination. Petition of Martensen, 1954, 129 Colo. 125, 267 P.2d 658. Other factors include a parent's presence, love, care and affection. In re Asterbloom's Adoption, 1946, 63 Nev. 190, 165 P.2d 157.
Although it was undisputed at trial that appellant did make some few contacts with his children, this fact does not in itself negate a finding of abandonment. In a remarkably similar case, the Supreme Court of Nevada upheld the trial court's finding of abandonment under a statute which required an absence of communication for a period of one year. In Re Carson, 1960, 76 Nev. 446, 357 P.2d 591. The court stated that:
"Although appellant's earnings in 1957 amounted to $6,000 and in 1958 to $5,000 and in 1959 to $3,500 to the date of the trial, he contributed nothing to the child's support and his gifts to the child were limited to those made on the child's birthday and on Christmas. He made no real attempt to insist upon or to enforce his rights of visitation under the divorce decree. It is true that he sought to prove that his attempts to communicate with his infant son were frustrated by respondent and by her attorney and by her accountant, and we are urged to accept this proof. This, of course, we cannot do in view of the court's findings." 357 P.2d at 593.
In the present case, the only contributions for the support of the children were made pursuant to court order, and then in a minimal amount over the period in question.
From the facts as herein stated, the trial court found that appellant had abandoned his children from May 1972 to October 1973, as defined by SDCL 25-6-4(2), making his consent unnecessary in the adoption of the minor children. We cannot conclude that the court's findings of fact were clearly erroneous under SDCL 15-6-52(a). The trial court had the right to resolve conflicting facts at the trial, and the court's findings are supported by substantial and convincing evidence. Further, we can find no error in the trial court's conclusion that there had been abandonment for a period of more than one year under SDCL 25-6-4(2) as interpreted by the cases above cited.
At the time this adoption action was commenced, the custody of the children was *835 subject to a continuing order of the Circuit Court of Brookings County under SDCL 25-4-45.
Under SDCL 25-6-6, "[t]he county (district county) court is vested with the jurisdiction to hear, try, and determine all matters relative to the adoption of children * * *." It follows that this exclusive jurisdiction gives the district county court the power to grant a final judgment of adoption. Once this judgment is entered by a court of competent jurisdiction it can be taken to the circuit court or any other court and enforced. This is a change in circumstances that will require the action of the circuit court in its continuing jurisdiction in a divorce case to vacate or modify the decree as to custody, care and education of a minor child. The adoptive father under SDCL 25-6-12 must sign an agreement to the effect that "the child adopted shall be treated in all respects as his own lawful child * * *." SDCL 25-6-17 provides:
"The natural parents of an adopted child are from the time of the adoption, relieved of all parental duties towards, and of all responsibility for the child so adopted, and have no right over it, except in cases where a natural parent consents to the adoption of his or her child by the child's stepfather or stepmother who is the present spouse of the natural parent."
As in the case where there is a death of a minor child or of the putative father, this adoption by a stepfather of a minor child who was formerly the subject of a divorce decree would automatically require the vacation of any rights or duties of the putative father under the divorce decree. While this issue was not raised in the present case and SDCL 25-6-17 seems to take care of the matter, the parties may wish to clear the record in the circuit court upon the filing of the decree of adoption.
Affirmed.
WINANS and DOYLE, JJ., concur.
WOLLMAN and COLER, JJ., dissent.
WOLLMAN, Justice (dissenting).
In defining the term "clear and convincing evidence," this court stated that:
"* * * The measure of proof required by this designation falls somewhere between the rule in ordinary civil cases and the requirement of our criminal procedure, that is, it must be more than a mere preponderance but not beyond a reasonable doubt. It is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegation sought to be established. Evidence need not be voluminous or undisputed to accomplish this." Brown v. Warner, 78 S.D. 647, 653, 107 N.W.2d 1, 4.
In amplifying this definition of the measure of proof encompassed within the term "clear and convincing evidence," this court stated that:
"* * * Its technical meaning has been expressed as `the witnesses must be found to be credible, that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" Cromwell v. Hosbrook, 81 S.D. 324, 329, 134 N.W.2d 777, 780 (citations omitted).
However loath I may be to overturn a finding of fact by the trial court, I cannot conclude that there is clear and convincing evidence in the record that appellant had given up or totally deserted his children and there had been an absolute relinquishment by appellant of the custody and control of the children and the laying aside of all care for them, the test of abandonment established in Mastrovich v. Mavric, 66 S.D. 577, 287 N.W. 97.
It is true that appellant may not have been a model father in absentia inasmuch as he did not faithfully comply with the *836 provisions of the divorce decree that required him to pay child support. Even in this respect, however, the evidence is equivocal that he willfully refused to make these required payments.
The trial court's finding of fact No. XIII states:
"That JERRY C. CHRISTOFFERSON made the following communications with his children:
1. Letter in September or October 1972;
2. Card in October 1972;
3. Christmas gift in 1972;
4. Phone call in December 1972;
5. Birthday gift to Michael in April 1973;
6. Birthday gift to Dalyn in July 1973 check for $25 which was returned marked `account closed.'"
It should be noted that any adverse inferences that could be drawn from the fact that the $25 birthday check sent by appellant to his son Dalyn in July of 1973 was returned unpaid should have been completely dispelled by Judy McCann's testimony that she had held the check for approximately one and one-half months before depositing it, and by appellant's testimony that he had left the account open from the date he wrote the check, July 20, 1973, until the middle of September of 1973, when he assumed that Dalyn was not going to get the check and then closed the account. It hardly comports with judicial fairness to penalize appellant for the failure of Dalyn's mother to take reasonable steps to convert a father's birthday gift check to his ten-year-old son to cash or its equivalent.
In addition to the court's finding regarding appellant's communications with his children during the period in question, the evidence is uncontradicted that appellant called Judy McCann in December of 1972 requesting that his children be allowed to come to Montana to visit him during the 1972 Christmas vacation and offering to pay their transportation expense for such visit. This request was denied by Judy McCann. Although the denial may have been reasonable under the circumstances, the fact that appellant did not see his children at this time should not be used in support of a finding that appellant had abandoned his children. Indeed, this uncontradicted evidence admits only of one finding: that appellant did not intend to abandon his children.
In addition to his direct communications with Judy McCann concerning visitations with his children, appellant testified that he enlisted the aid of his sister-in-law to communicate to Judy his desire to visit the children. Judy McCann acknowledged that she had received a telephone call from appellant's sister-in-law approximately a month and a half prior to the hearing on the petition for adoption during which the sister-in-law informed Judy that appellant would like to stop on his way through Brookings and visit his children. Granted that this visit did not materialize prior to the time the petition was filed, the uncontradicted evidence that appellant expressed an interest in visiting his children runs counter to a finding that he had intended absolutely to abandon them.
The cases cited in the majority opinion to support a finding of abandonment in the instant case are either based upon statutes which are materially different from SDCL 25-6-4 or upon factual situations that are so far divergent from the facts herein as to vitiate the precedential value of those holdings.
Because the record does not in my opinion support the finding that, under the test established in Mastrovich v. Mavric, supra, appellant had abandoned his children, I would reverse the judgment and remand the case with directions to dismiss the petition for adoption.
COLER, Justice (dissenting).
I join with Justice Wollman fully in his dissent and for a more compelling reason I would reverse.
*837 Quite properly, as was done by this court in Application of Crawford, 1965, 81 S.D. 331, 135 N.W.2d 140, the majority opinion has volunteered to deal with the propriety of the district county court's assumption of jurisdiction when the circuit court had previously adjudicated the custody of the children and retained continuing and exclusive jurisdiction under SDCL 25-4-45 (emphasis supplied). Application of Crawford, 81 S.D. at p. 335, 135 N.W.2d 140; 24 Am.Jur.2d, Divorce and Separation, § 776. Unlike the statement found in Application of Crawford, supra, to the effect that the proposed resolution of the issue of conflict of jurisdiction between district county and circuit court would only be "advisory" the majority opinion does not so label its action.
Whether the majority opinion, in its treatment of the jurisdictional question, constitutes an advisory opinion or mere dicta, I would not retreat from the sound reasoning announced in the opinion, special concurrence and dissent found in Application of Crawford, supra. There the entire court at least agreed that another circuit court, under a habeas corpus proceeding, could not interfere with that continuing jurisdiction:
"* * * As a general proposition when two or more courts in a state have concurrent jurisdiction, the court first assuming jurisdiction retains it to the exclusion of all other courts in which the action might have been initiated. To hold otherwise would tend to encourage an unseemly conflict between courts of concurrent jurisdiction." 81 S.D. at p. 335. (See also pp. 336, 337, 338), 135 N.W.2d at p. 142.
The legislature recognized the plain import of that language and in response to Application of Crawford, supra, enacted the second paragraph of SDCL 26-7-1[1] in 1968 making it clear that it felt it was necessary to allow the juvenile court some jurisdiction notwithstanding the continuing jurisdiction of the circuit court when the child becomes a ward of the state. This act was consistent with prior pronouncement of this court:
"By nature and under the common law and by virtue of statutory provisions, * * * a parent has a preferred legal right to custody of his or her own children. But under the common law and modern statutes as well, * * * the state through the courts has a right under proper circumstances to terminate the parental right and deprive the parent of custody." (citations omitted) Blow v. Lottman, 1953, 75 S.D. 127, 59 N.W.2d 825.
The legislature has thus far permitted juvenile court termination of parental rights only after an adjudication under SDCL 26-8-36.[2] There is no compelling need for this court to further legislate when we generally consider that a court has only such jurisdiction as is granted by the constitution or necessarily implied from that grant, Newton *838 v. Erickson, 1950, 73 S.D. 228, 41 N.W.2d 545, or, as previously provided by Art. V, § 20 of the pre-1972 provisions of our constitution, (now Art. V, § 5) "such other civil and criminal jurisdiction as may be conferred by law", is granted by statute.
Clearly under SDCL §§ 25-4-45, 26-7-1 and 26-8-36, as they now stand and as heretofore construed by this court, the trial court had no jurisdiction under the facts of this case as the circuit court had not terminated the parental rights of the father in the divorce decree so as to render his consent unnecessary under SDCL 25-6-4(4). SDCL 25-6-4(2) is not applicable to this situation.
The North Dakota Supreme Court, construing statutes of the same origin as our own, has adopted this position and has clearly stated the underlying policy justifying the rule.[3] On the jurisdictional issue, I would reverse.
NOTES
[1] SDCL 26-7-1.

"The district county court shall have original jurisdiction in all proceedings coming within the terms of this chapter and chapter 26-8. Nothing contained in this chapter and chapter 26-8 shall deprive the circuit court of its jurisdiction.
"Where a custody award has been made in a circuit court in a divorce action or other proceeding and the jurisdiction of the circuit court in the case is continuing, the juvenile court may nevertheless acquire jurisdiction in a case involving the same child, if he is dependent or neglected or otherwise comes within the jurisdiction set forth in this section." (emphasis supplied)
[2] The last paragraph of SDCL 26-8-36 reads:

"When a child has been adjudicated neglected because he has been willfully abandoned by his parent or parents, the court may enter a decree terminating parental rights in the child, if it finds that the parent or parents having legal custody have surrendered physical custody for a period of at least six months and during this period have not manifested to the child or the person having physical custody a firm intention to resume physical custody or to make arrangements for the care of the child."
[3] "We have repeatedly held that the district court in which the divorce decree was obtained has continuing jurisdiction insofar as the rights of the children are concerned * * *, and that such award of the custody, care, and education of the children of the parties may be modified at any time by a proper showing of changed conditions * * *.

"Thus, if conditions change (as, for example, the person having custody of children under a decree becomes an unfit parent), a divorce decree may be amended to award custody to the parent that originally lost custody or was deprived of custody in the initial divorce decree.
* * * * * *
"To change or curtail rights of visitation as given under a divorce decree is one thing, but to terminate permanently all parental rights, as is the result of the issuance of an adoption decree, is quite another.
"As previously pointed out, the court in which the divorce decree was issued has continuing jurisdiction over questions of custody and also visitation rights. If the appellants feel the visitation rights should be changed or modified in the best interests of the children, they have the right to seek the modification of the visitation rights in the jurisdiction wherein the divorce decree was issued." Bond v. Carlson, 1971, N.D., 188 N.W.2d 728.