In the Matter of the ADOPTION OF Rachel Lorraine EVERETT a/k/a Rachel Rae Oakland.

Nos. 12599, 12605.

Supreme Court of South Dakota.

Argued Oct. 15, 1979.

Decided Dec. 27, 1979.

Robert J. Burns, of Burns & Hagen, Sioux Falls, for appellants, Warren and Karen Oakland.

Lee R. Burd, Deputy State's Atty. for Minnehaha County, Sioux Falls, for appellant State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Russell D. Kading, Sioux Falls, for respondent Candace Everett.

FOSHEIM, Justice.

This is a consolidated appeal brought by Mr. and Mrs. Warren Oakland and the State of South Dakota seeking reversal of: (1) an order allowing respondent Candace Everett to withdraw her consent to adoption and her petition for voluntary termination of parental rights; and (2) an order dismissing the Oaklands' petition for adoption. Appellants also seek review of an adjudication finding Ms. Everett's child not to be dependent and neglected. The attorney appointed to represent the interests of the child joins Ms. Everett on all issues. We affirm.

In late March of 1977, 24 year-old Candace Everett, pregnant and unwed, indicated to Karen Miller, a friend, that she wished to put her baby up for adoption when it was born. Mrs. Miller arranged a meeting between Ms. Everett and Mr. and Mrs. Oakland to discuss the possibility of the Oaklands adopting the child. At this meeting, Ms. Everett stated that in lieu of adoption she might place the child in a foster home. The Oaklands indicated their interest in adoption and told Ms. Everett that if they took the child when born, they would be willing to give her additional time to decide whether she wished to surrender the child permanently. Following this meeting, the Oaklands' attorney arranged a conference in his office between Ms. Everett and the Oaklands where Ms. Everett signed an adoption agreement, a consent to adoption, and a statement authorizing release of the child to the Oaklands upon birth. The consent form that Ms. Everett signed at the meeting contained this language:

"I have been advised that I may have additional time in which to consider this matter . . ."

When the baby was born on April 10, 1977, Ms. Everett was unable to make a decision and kept the baby until late April. She then informed the Oaklands that she wanted them to take her child. On April 29, 1977, at the office of the Oaklands' attorney, she signed a petition for termination of her parental rights and the Oaklands took the child to their home.

In late August of 1977, Ms. Everett informed the Oaklands that she wanted her child back. On September 27, 1977, with the aid of an attorney, she executed a withdrawal of the petition for termination of parental rights and consent to adoption and also a termination of the adoption agreement. The Oaklands nevertheless filed a petition for adoption on October 7, 1977, and a hearing thereon was set for October 31, 1977. On October 18, 1977, however, Ms. Everett filed a petition to terminate the adoption agreement and to withdraw her consent to adoption. A hearing on her petition was scheduled for October 26, 1977. Meanwhile, on October 25, 1977, the state commenced proceedings alleging that the child was dependent and neglected within the meaning of SDCL 26–8–6. Trial on this matter was set for December 2, 1977.

The hearing on Ms. Everett's petition was held as scheduled. Thereafter, on October 31, 1977, the court issued an order granting Ms. Everett's petition to retract her consent and to cancel the adoption agreement. The court further ordered that the hearing originally scheduled for October 31, 1977, on the Oaklands' petition for adoption be indefinitely adjourned.

Hearings on the state's petition alleging dependency and neglect were held in December of 1977. On March 29, 1978, the court issued an opinion dismissing the dependency and neglect proceeding together with the petition for adoption which had been filed by the Oaklands the previous October. Upon motion by the state, the parties were permitted to reargue and brief the matter. On July 25, 1978, the trial

court filed a judgment upholding its original opinion denying the state's petition.

Meanwhile, upon motion of the Oaklands, an order was entered setting June 5, 1978, as the date for a final hearing in the adoption matter. That hearing, however, was never held for reasons not disclosed in the record. No further hearings were conducted regarding the merits of the Oaklands' petition for adoption, and the file remained open until an order was entered on December 15, 1978, dismissing the petition.

## I

Appellants contend that SDCL 26–8–54 prohibits return of the child to Ms. Everett. That statute provides:

The court shall not have authority under § 26–8–48, § 26–8–52, or § 26–8–53 to return or restore any such child to the custody of his parents, or either of them, after the lapse of sixty days following the delivery of a written instrument of surrender for the purpose of adoption of such child, executed after the birth of such child by the parents of such child, or by its mother, if the child be illegitimate, except:

(1) On a clear showing of fraud or duress with respect to the execution and delivery of such surrender; or

(2) With the consent of the legal custodian of such child.

Appellants claim this statute is controlling because the Oaklands had custody well beyond the sixty-day lapse which prevents return of a child under the statute. A reading of SDCL 26–8–54 demonstrates that the legislature intended to limit the authority of the court to restore custody of children under any of the statutes therein referred to.[1] SDCL 26–8–54, however, as well as the three statutes mentioned therein, all appear in that part of Title 26 which relates to the dispositional stages of dependency and neglect proceedings. This case never reached disposition. Where a statute is open to construction and interpretation, every intendment should be made in favor of the natural parents' claim and it should be construed in support of the parents' natural rights over those of adoptive parents. *Matter of Adoption of Children*, 96 N.J.Super. 415, 424, 233 A.2d 188, 193 (1967); *In re Sharp*, 197 Kan. 502, 419 P.2d 812 (1966); 2 Am.Jur.2d Adoption § 7 (1962). Abiding by this principle, we hold that SDCL 26–8–54 applies only to cases where there has been an adjudication of dependency and neglect. In the present case, there was no finding of dependency and neglect. Accordingly, we conclude that the statute does not preclude return of this child to its mother.

1. SDCL 26–8–48 provides:

The guardianship under this chapter shall continue until the court shall by further order otherwise direct, but not after such child shall have reached the age of majority. Any such child or any person interested in any such child may from time to time, upon a proper showing, apply to the court for the appointment of a new guardian or the restoration of such child to the custody of its parents or for the discharge of the guardian so appointed.

SDCL 26–8–52 provides:

Upon the hearing on such report, with or without further evidence, the court may, if it deem proper, remove such guardian and appoint another in his stead, or take such child away from the institution or association and place it in another, or restore such child to the custody of its parents or former guardian or custodian.

SDCL 26–8–53 provides:

Whenever it shall appear to the court, before or after the appointment of a guardian under this chapter, that the home of the child or of its parents, former guardian, or custodian is a suitable place for such child, and that such child should be permitted to remain or ordered to be returned to such home consistent with the public good and the good of the child, the court may enter an order to that effect, returning such child to his home under probation, parole, or otherwise; it is the intention of this chapter that no child shall be taken away or kept out of its home or away from its parents and guardian any longer than is reasonably necessary to preserve the welfare of the child and the interests of this state. No such order shall be made without first giving ten days' notice to the guardian, institution, or association to whose care such child shall have been committed, unless such guardian, institution, or association consent to such order.

## II

█ Appellants next contend that the child was "abandoned" under subdivision (1) of SDCL 26–8–6.[2] Whether abandonment exists is a question of fact for the trial court and the court's findings will not be disturbed unless clearly erroneous. *Matter of Christofferson*, 89 S.D. 287, 232 N.W.2d 832 (S.D.1975). In *Mastrovich v. Mavric*, 66 S.D. 577, 579, 287 N.W. 97 (1939), we established this standard:

> To constitute abandonment under our code it must appear by clear and convincing evidence that there has been by the parents a giving up or total desertion of the minor child. In other words, there must be shown an absolute relinquishment of the custody and control of the minor and thus the laying aside by the parents of all care for it.

In addition to absolute relinquishment of custody and care, there must also be a showing of intent to abandon, and "intent to abandon may be inferred from conduct." 89 S.D. at 290, 232 N.W.2d at 834. Appellants cite Utah and Alaska cases in support of their argument that the court should employ an objective standard only, and not give weight to the subjective expressions of the natural parents. We reject this contention and adhere to our language in *Christofferson* stating that such intent *may* be inferred from conduct. It follows that the court may consider the subjective statements of parents in addition to objective factors in determining that intent.

█ Ms. Everett claims that she was extremely upset and confused when she surrendered the child and that she did so with the understanding, apparently based on what transpired at the meeting in late March, that she had six months in which to finally decide. She testified that while the Oaklands had the child she made numerous attempts to arrange visits, but her frequent out-of-state employment interfered.

It is significant that the consent to adoption which was filed along with the adoption petition contained the additional-time provision. Although that provision was indefinite with regard to the specific time allowed, Mrs. Miller testified that Mrs. Oakland told Ms. Everett that she could have six months to decide whether she wanted to relinquish her child. She further testified that one month after they had obtained the baby, the Oaklands refurbished a nursery, although they harbored doubts about the prudence of incurring such expenses, in the words of Mrs. Oakland, "until Candy decides". Mrs. Oakland testified that apparently there was a misunderstanding about the waiting period. The evidence, however, supports the finding of the trial court in favor of Ms. Everett's version, particularly since she lacked counsel at both the March 22nd and April 29th meetings. A serious question existed with respect to Ms. Everett's intent. We cannot say as a matter of law that the trial court's finding on the abandonment issue was clearly erroneous.

█ Appellants also contend that the child was dependent and neglected within the meaning of subdivisions (2), (4), and (5) of SDCL 26–8–6. Appellants claim that the reference in subdivision (2) to children who lack "proper parental care" means that such care must be provided by the natural parent. We cannot accept that interpretation.

2. SDCL 26–8–6 provides, in part:

   In this chapter unless the context otherwise plainly requires "neglected or dependent child" means a child:

   (1) Whose parent, guardian, or custodian has abandoned him or has subjected him to mistreatment or abuse;

   (2) Who lacks proper parental care through the actions or omissions of the parent, guardian, or custodian;

   (3) Whose environment is injurious to his welfare;

   (4) Whose parent, guardian, or custodian fails or refuses to provide proper or necessary subsistence, education, medical care or any other care necessary for his health, guidance, or well-being; or

   (5) Who is homeless, without proper care, or not domiciled with his parent, guardian, or custodian through no fault of his parent, guardian or custodian.

The statute speaks of the actions or omissions of *any* guardian or custodian. Further, there is an absence of evidence that Ms. Everett cannot care for the child if custody is returned to her; in fact, the contrary appears to be true, in light of her professed intentions.

## III

■ Appellants suggest that the trial court erred in not considering the child's best interests at the dependency and neglect hearing. SDCL 26-8-22.5, however, states in part:

> At the adjudicatory hearing . . . the court shall first consider *only* whether the allegations of the petition are supported by . . . a preponderance of the evidence in cases concerning neglected or dependent children. [emphasis supplied]

Thus, while all the provisions of SDCL 26-8 are designed to protect the interests of the child, an explicit consideration of the child's future best interests occurs *after* an adjudication of dependency and neglect. Appellants rely upon *In re Magee*, 74 S.D. 286, 52 N.W.2d 99 (S.D.1952) in support of their contention that the best interests of the child must be considered in the adjudicatory phase of dependency and neglect proceedings. Such reliance, however, is misplaced. In *Magee*, there had been a determination of dependency and neglect. In the present case, as noted earlier, there was no finding of dependency and neglect.

---

**3.** SDCL 25-5A-15 provides:

Hearings shall be informal in nature and the best interest of the child shall be considered paramount.

**4.** SDCL 25-6-13 provides:

The circuit judge must examine all persons appearing separately and if satisfied from such examination and the report of the investigation that the child is suitable for adoption and the petitioning foster parent or parents financially able and morally fit to have the care and training of such child, that all requirements of the law have been met and

■ Appellants also contend that the trial court was obligated to consider the child's best interests at the hearing on revocation of consent. Had this been an adoption hearing, the child's best interests would necessarily be considered under SDCL 25-5A-15 (relating to voluntary termination of parental rights)[3], or under 25-6-13 (relating generally to adoption)[4]. However, the state concedes in its brief that the hearing "was for the narrow and limited purpose of allowing Ms. Everett to withdraw her consent." It was not an adoption hearing. Thus, the court was not called upon to consider the best interests of the child at the revocation hearing.

## IV

■ The Oaklands contend that they were denied due process because their adoption petition was ultimately dismissed by virtue of the order entered in the dependency and neglect action. They claim they were entitled to a full hearing on the adoption petition because SDCL 25-6-10 states in part that "Whenever . . . a husband and wife jointly . . . petition the Circuit Court for leave to adopt a minor child, the Judge . . . *shall* fix a time for hearing." (emphasis supplied). This argument, however, overlooks SDCL 25-6-12, which requires that persons whose consent is necessary appear personally or through counsel or legal guardian and give the necessary consent. Prior to the hearing on the adoption petition scheduled for Octo-

---

that interests of the child will be promoted by the adoption, he must make an order declaring that the child thence forth shall be the adopted child of the person adopting and shall be regarded and treated in all respects as the child of such person; and which order, among other things, shall contain the following:

(1) The full adoptive name, date of birth, sex, color or race, and place of birth, of the adopted child; and

(2) The full name, date of birth, citizenship, residence, color or race, birthplace, and occupation of both adoptive persons.

ber 31, 1977, the court determined that Ms. Everett's consent had been validly withdrawn. The only procedure by which the Oaklands could have adopted the child without Ms. Everett's consent was under the provisions of SDCL 25–6–4,[5] none of which were applicable. A hearing on the adoption petition, under the circumstances, would have been meaningless.

Affirmed.

All the Justices concur.

5. SDCL 25–6–4 provides:

A child cannot be adopted without the consent of the parents, if living, provided that in the following cases consent shall not be necessary:
(1) From a parent who has been adjudged guilty of adultery or who has been convicted of any crime punishable by imprisonment in the penitentiary for a period not less than one year, or for an offense involving moral turpitude;
(2) From any parent who has abandoned his or her child for the period of one year;
(3) From any parent who has been adjudged by a court of competent jurisdiction to be an habitual drunkard or mentally incompetent;
(4) From any parent who has been judicially deprived of the custody of the child, provided any such adjudication shall be final on appeal to the court of last resort, or the time for such appeal shall have expired.