**In the Matter of the Termination of Parental Rights over D.D.D., A Minor Child.**

**No. 12918.**

Supreme Court of South Dakota.

Submitted on Briefs May 22, 1980.

Decided July 1, 1980.

Roger C. Lerud, Asst. Atty. Gen., Pierre, for appellee, State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Autine Hansen, Rapid City, for appellant, father.

MILLER, Circuit Judge.

In this appeal the appellant seeks to set aside an order of the trial court which ratified one of its previous orders terminating parental rights over a child born out of wedlock.

We reverse and remand with directions.

## PARTIES

D.D.D. was born out of wedlock. His natural mother will be referred to as C.D. The appellant herein, referred to as D.R., is the natural father of D.D.D. The State is appellee in these proceedings.

## FACTS

D.D.D. was born on March 18, 1979. On April 12, 1979, C.D. filed an instrument entitled "Petition for Voluntary Termination of Parental Rights," making allegations consistent with SDCL 25–5A–6 and asking that the court terminate her parental rights and transfer the same to the Department of Social Services for adoption placement. At the time of the filing of the petition, C.D. filed a waiver of notice of the time and place of the hearing on the petition.

Also filed on April 12, 1979, was an instrument entitled "Waiver of Notice and Consent to Adoption and Power of Attorney to Consent to Termination of Parental Rights" signed by D.R. Therein D.R.: designated a named social worker with the Department of Social Services as his agent and attorney in fact to consent to the termination of his parental rights over D.D.D.; waived notice of any proceedings relating to said termination or later adoption proceedings; consented to adoption of D.D.D.; waived all custody and control over D.D.D. and transferred the same to the Department of Social Services. Below his signature is a signed statement that he knew and understood the foregoing and the consequences thereof and that he signed the same of his own free will.

Pursuant to a hearing, the trial court on April 17, 1979, entered an order terminating and transferring parental rights over D.D.D. consistent with the prayer for relief in C.D.'s petition.

On May 17, 1979, D.R. filed a motion for rehearing, seeking to have the matter of the termination of his parental rights over D.D.D. reheard. In his supporting affidavit he alleged, among other things, that he did not knowingly and voluntarily consent to the termination of his parental rights; that C.D. had promised him that if he would sign she would marry him and regain custody of the child; and that because of his emotional state he thought he was only giving temporary custody of D.D.D. to the Department of Social Services.

The trial court entered an order for rehearing, which stated that it was dated ". . . this 16th day of May, 1979—ENTERED NUNC PRO TUNC May 17, 1979." We have no way of knowing if this was entered pursuant to an evidentiary hearing or based on the affidavit or otherwise. There is no transcript nor does the order so indicate. The order recites that "[I]t appearing to the Court that it is in the best interest of the above named child that a Rehearing be had," and orders "that a Rehearing . . . be had at a later date when the mother and father of said child have had time to seek counseling in the matter."

On July 20, 1979, a Pennington County deputy state's attorney filed a motion to reconsider urging that it would be "in the best interest of all parties" and would "facilitate the final disposition" of D.D.D. if the court would reconsider and review the order terminating and transferring parental rights. That motion was noticed for hearing on July 31, 1979, with notice being given to D.R.'s counsel, Dan Kelley, of Custer, South Dakota. On July 25, 1979, Kelley withdrew as D.R.'s counsel. It is not clear whether Kelley ever advised D.R. of the

hearing date. D.R. denies any personal notice of the hearing.

At the hearing on July 31, 1979, appearances were made by the deputy state's attorney, a representative of the Department of Social Services and C.D. No evidence was presented, but the court did have conversations with C.D. and a representative of the Department of Social Services. Apparently based upon his own independent knowledge, the trial judge recited that D.R. had been "acting in a somewhat obstructing manner," had "not acted in good faith," and had indicated "a total lack of desire to proceed to effectively assert his rights over the minor child."

The court concluded that D.R. was in default, that he had received appropriate notice, and that he had been adequately advised of his rights. The court then orally ordered that its previous order which terminated parental rights be reinstated.

On August 15, 1979, the trial court signed a written order implementing its oral order of July 31 specifically stating that the April 17 order was "reinstated and maintained."

D.R. seeks to have the August 15 order set aside, urging that: (1) the trial court had failed to find that he had voluntarily and knowingly relinquished his parental rights; and (2) he had no notice of the July 31, 1979, hearing.

## DECISION

SDCL 25–5A provides the procedure for voluntarily terminating parental rights "whenever it appears that the parent or parents of any child desires to relinquish such parental rights." SDCL 25–5A–2. The term "parents" is defined as "the mother and father if living of a child." SDCL 25–5A–1(3).

There is no doubt that SDCL 25–5A requires D.R.'s consent to the voluntary termination of his parental rights over D.D.D. Involuntary termination of parental rights is accomplished under the provisions of SDCL 26–8, which relate to dependent and neglected children.

We are satisfied that the provisions of SDCL 25–5A were complied with up to and including the time of the entry of the order terminating and transferring parental rights on April 17, 1979. Up to that point the record on its face shows a valid termination of the parental rights of both C.D. and D.R. over D.D.D.

The problems arise through the entry of the order for rehearing, especially because of the language used indicating that "it is in the best interest of the . . . child" and because of the fact that the order is conditioned on allowing the natural parents to have time to seek counseling. The order on its face is a judicial determination that something in the prior proceedings is procedurally suspect which requires the court to reexamine the same through the rehearing process. Since the principal allegation in D.R.'s motion for rehearing is that his so-called "waiver and consent" was not voluntarily made, we must assume that the trial court agreed that there must be some question as to the validity of that allegation or it would not have made the order in the language that it did.

Irrespective of the question of the presence of D.R. at the rehearing on July 31, 1979, and irrespective of the question of his notice or lack thereof of that proceeding, the matter of the voluntariness of D.R.'s waiver and consent has never been reached by the trial court. Rather, as stated above, the court's determination on July 31 seemed based on D.R.'s conduct subsequent to the time of the order for rehearing rather than as to the voluntariness of his waiver and consent. Even though D.R. was not present, C.D. was available to testify and could have been asked about D.R.'s allegations relating to her promise to marry him and to seek return of the child.

At the July 31, 1979, hearing it appears that everyone was confused as to the status of the case, including the deputy state's attorney upon whose motion the hearing was held. The motion did not call upon the court to uphold its previous adjudication, but rather asked that the court review the positions and rights of all of the parties involved.

This Court is in the position of examining conflicting orders of the trial court relating to generally the same subject matter. The first is the order terminating and transferring parental rights in which it is found and held that D.R. voluntarily consented to the termination of his parental rights and waived notice of further proceedings; the second is the order for rehearing, which by its terms raises the question of the voluntariness of the consent and waiver; and, lastly, is the order here on appeal which reinstates and maintains the original order terminating parental rights but does so without entry of specific findings of fact or evidence upon which to base the same.

This Court is in the undesirable position of being unable to reach the specific issues raised by D.R. The central issue in the case is the voluntariness of the execution of the waiver and consent by D.R. The hiatus in the record, as outlined above, leaves that specific issue in limbo.

Accordingly, the case is remanded to the trial court with the direction that it hear, determine and issue findings of fact and conclusions of law on the sole issue of whether D.R. acted knowingly and voluntarily when on April 10, 1979, he signed the waiver of notice and consent to adoption and power of attorney to consent to termination of parental rights. If the court so holds, D.R. will be in the position of being able to appeal that determination. If the trial court should conclude that that document was not voluntarily signed, the State will have the right to either appeal that determination or file a petition pursuant to SDCL 26–8.

The order appealed from is reversed, and the case is remanded to the trial court for proceedings consistent herewith.

All the Justices concur.

MILLER, Circuit Judge, sitting for HENDERSON, Justice, disqualified.