**In the Matter of the ADOPTION OF Lance Ronald SICHMELLER.**

No. 14636.

Supreme Court of South Dakota.

Considered on Briefs Feb. 5, 1985.

Decided Dec. 11, 1985.

Leon J. Vander Linden, Webster, for appellant Ronald Sichmeller.

Thomas M. Tobin, of Maynes, Tonner, Maynes & Tobin, Aberdeen, for appellee Frank Mills.

WUEST, Acting Justice.

This is an appeal from an order declaring Lance Ronald Sichmeller adopted. We affirm.

Lance Ronald Sichmeller was born on October 8, 1974. His parents, Jill Gross Sichmeller and Ronald Sichmeller, were divorced on August 25, 1975. From August 1975 until August 1977, Ronald visited Lance six times and made sporadic child

support payments. After Jill married farmer Frank Mills in 1977, however, Ronald ceased all contact with Lance. That year, Ronald developed multiple sclerosis.

On June 24, 1981, Ronald petitioned the court to terminate his parental rights so that Frank Mills could conduct adoption proceedings. In 1983, with the intention of allowing the adoption, he arranged for Lance to receive Social Security benefits and a military ID card allowing medical benefits and college grants. He also gave Jill $1,000 on December 28, 1983.

Frank petitioned for adoption on March 6, 1984. Ronald went to visit Frank and Jill to work out the details of the adoption. Jill was then twenty-nine years old, a diabetic, and blind in one eye and partially blind in the other. She had just been released from the hospital after suffering a heart attack. After observing Jill's condition, Ronald decided to oppose the adoption.

Ronald admitted that he had not supported, written to, seen, or talked to Lance from 1977 to 1983, in part, because of his deteriorating health. He did testify that he wanted to see Lance during Christmas 1983, but that Jill and Frank would not allow it. He saw Lance at the adoption hearing but did not talk to him. Ronald was concerned and cared for Lance, but because of his lack of contact with Lance, Ronald "wouldn't go so far as to say I love him."

Ronald was impressed by the way Frank was raising Lance and recognized that Lance was integrated into Frank's extended family. If Jill were to die, he did not intend to seek custody of Lance except in the unlikely event that Frank became an alcoholic. Ronald simply wanted to be informed of Lance's progress and was concerned that the adoption would mean the loss to Lance of the military benefits.

The trial court granted Frank Mills' petition for adoption. The court concluded that Ronald had consented to the adoption, "but even in the absence of that consent ... the natural father has abandoned said child ... which eliminates the need for consent on the part of the natural father."

■ Ronald raises three issues on appeal. First, he argues that the trial court erred by finding that he consented to the adoption. Ronald admits that he did consent to the adoption in 1981. By resisting the petition for adoption, he argues that he withdrew his consent. In light of the trial court's conclusion that there was abandonment "even in the absence of that consent," we need not discuss this contention.

Ronald's second contention is that he did not abandon his child.

■ Consent to adoption is not necessary if a parent has abandoned his child for one year. SDCL 25–6–4.[1] Whether a parent has abandoned a child within the meaning of SDCL 25–6–4 is a question of fact to be decided by the trial court; unless the finding is clearly erroneous, it will not be overturned. *Matter of Adoption of Bellows*, 366 N.W.2d 848 (S.D.1985).

■ In *Mastrovich v. Mavric*, 66 S.D. 577, 579, 287 N.W. 97, 97–98 (1939), this court established the standard for determining abandonment:

> To constitute abandonment under our code it must appear by clear and convincing evidence that there has been by the parents a giving-up or total desertion of the minor child. In other words, there must be shown an absolute relinquishment of the custody and control of the minor and thus the laying aside by the parents of all care for it.

There must be a showing of an intent on the part of the parent to abandon and to relinquish parental obligations; this intent

---

**1.** This case was tried on April 16, 1984. At that time SDCL 25–6–4 provided, in part:

A child cannot be adopted without the consent of the parents, if living, provided that in the following cases consent shall not be necessary:

. . . . .

(2) From any parent who has abandoned his or her child for the period of one year; ...

SDCL 25–6–4 was later amended by 1984 S.D. Sess.L. ch. 188.

may be inferred from conduct. *In re Adoption of Christofferson*, 89 S.D. 287, 232 N.W.2d 832 (1975). In establishing abandonment, factors to be considered include a parent's presence, love, care and affection, and monetary support. *Christofferson, supra*. The trial court may consider the subjective statements of the parents in addition to objective factors. *Matter of Adoption of Everett*, 286 N.W.2d 810 (S.D.1979). An involuntary, temporary inability to assume a parental role is not abandonment. *Matter of Guardianship of D.L.L. and C.L.L.*, 291 N.W.2d 278 (S.D. 1980).

We conclude that the evidence in this case supports the trial court's determination that there was clear and convincing evidence [2] that Ronald totally relinquished the custody and control of Lance. Since 1977, Ronald failed to visit the child, send any card or present, make any call, or pay any child support. He admitted that Lance would not recognize him. In late 1983, Ronald did give Jill $1,000 for Lance and obtained a military identification card for Lance. He did so, however, with an intention of allowing the adoption to proceed, not because of a desire to maintain a parent-child relationship. It was only after he saw Jill's physical condition that he decided to oppose the adoption. Even then, he admitted that he did not love the child and did not have the ability to care for him. Clearly the evidence in this case supports a finding of abandonment.

Finally, Ronald argues that adoption is not in Lance's best interest, *see Matter of Adoption of Zimmer*, 299 N.W.2d 574 (S.D.1980), since he will never attempt to gain physical custody of Lance and adoption may mean the loss to Lance of military benefits. Balanced against this, however, is the fact that Frank Mills has raised Lance since he was thirty-two months old and considers him his son. Lance does not know Ronald and is fully incorporated into Frank Mills' extended family. In addition, neither Ronald nor Jill is physically capable of caring for Lance alone. While Lance may lose military benefits, Frank Mills has the financial capability of caring for him. We will not disturb the trial court's determination on this issue. SDCL 25-6-13.

The order appealed from is affirmed.

FOSHEIM, C.J., and MORGAN, J., concur.

HENDERSON, J., concurs specially.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not participating.

HENDERSON, Justice (specially concurring).

A parent may validly withdraw his/her consent to adoption. *Matter of Adoption of Everett*, 286 N.W.2d 810 (S.D.1979). *See also, In re D.D.D.*, 294 N.W.2d 423, 426 (S.D.1980), wherein this Court remanded the case to the lower court with directions to determine the issue of voluntariness.

This father gave his consent to adoption in 1981 via a petition to voluntarily terminate his rights. However, at that time, he was suffering severely from multiple sclerosis and did not believe that he should continue to have a father-son relationship. The father was never notified of a hearing on adoption proceedings and the adoption proceedings just lingered. In 1984, the mother of the child, Mrs. Frank Mills, suffered a very serious heart attack. She was also a diabetic, extremely ill, blind in one eye, and partially blind in the other. Her heart attack was in February 1984 and the father was approached in March 1984, by Frank Mills' attorney, concerning the proposed adoption. Father was not asked to consent to the proceedings but was then served with a petition alleging abandonment. Apparently, due to the health of the mother, father did not want to consent to the adoption. He simply had changed his

2.  Clear and convincing evidence is that "measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegation sought to be established." *Brown v. Warner*, 78 S.D. 647, 653, 107 N.W.2d 1, 4 (1961). Further definition is found in *Cromwell v. Hosbrook*, 81 S.D. 324, 134 N.W.2d 777 (1965).

mind. Also, his multiple sclerosis had gone into a state of remission. The petition before the trial court was based upon the father's alleged abandonment of his son and not upon his consent to the adoption. Therefore, the court below erred in concluding that the father had consented. *See In re Romero*, 73 S.D. 564, 568, 46 N.W.2d 108, 110 (1951):

> [W]e are not troubled by the fact that this mother signed a consent to the adoption of her child. In the circumstances at bar, we deem it enough that she changed her mind. We are unfamiliar with any principle of jurisprudence which would render such a naked consent binding on a parent.

A proceeding for voluntary relinquishment, which is the way this case started out, is intended to provide only for the parental relinquishment of unwanted children, not for the relinquishment of children who are genuinely wanted by a parent.

This brings us to the question of the sustainability of the trial court's decision on abandonment. Under all of the circumstances of this case, having deeply considered the great custody and fundamental rights of a natural parent, *In re K.D.E.*, 87 S.D. 501, 210 N.W.2d 907 (1973), I come to the conclusion that the trial court should be affirmed in its decision on abandonment. For approximately six years, the father did not support, write to, or visit his son. Although he had concern for his son when the adoption arose, and particularly that the son obtain Veteran's benefits rights, he testified that he "wouldn't go so far as to say I love him." He indicated that if Mrs. Frank Mills were to die, he would not want custody of the boy but would leave the boy with Frank Mills. Replete is the record that Frank Mills was a loving father to this boy and had a warm relationship with him. All of the years of care by Frank Mills and the love that he has shown this boy, outweighs the possible loss of financial benefits from the Veteran's Administration. In all of the years subsequent to the divorce in 1975, there simply does not appear to be an attempt by the natural father to have a meaningful relationship of any kind with his son. Accordingly, I would affirm the trial court on the abandonment issue which requires no consent on the natural father's part. *See* SDCL 25-6-4(2).