In the Matter of the **ADOPTION OF the Children Known as Candi Sue BELLOWS and James William Bellows, Jr.**

No. 14680.

Supreme Court of South Dakota.

Considered on Briefs Feb. 6, 1985.

Decided April 24, 1985.

Denis R. Eckert, Elk Point, for appellant Donna Bellows.

John Slattery, Elk Point, for appellee Sandra Lee Bellows.

WOLLMAN, Justice.

This is an appeal by Donna Sue Bellows from a judgment that declared that she had abandoned her two children and that therefore her consent was not required as a condition precedent to the adoption of the children by Sandra Lee Bellows. We reverse and remand with directions to dismiss the petition for adoption.

Donna Sue Bellows (Donna) and James W. Bellows (James) were married on April 19, 1975. Two children were born to the marriage, Candi Sue on December 24, 1975, and James William, Jr. on August 24, 1977.

Donna and Jim lived in Brodhead, Wisconsin, the area in which they grew up, from the time of their marriage until the spring of 1981, when they moved to Sioux City, Iowa, so that James could be closer to his parents, who were then living there. James' parents moved into the residence occupied by Donna and James and slept in the upstairs bedroom, while Donna and James and the children slept downstairs on the floor. This living arrangement continued until August of 1981, when Donna decided to leave the family home out of her concern for the best interests of the children. By her own admission, she and James frequently fought up to the time she left the marital home. In response to a question regarding what they fought about, Donna testified, "The kids. His parents. Family."

On or about August 1, 1981, Donna left Sioux City and went to Janesville, Wisconsin, where her mother and her two sisters were living. James acknowledged that Donna's primary concern at the time she left the marital home was the welfare of the two children. He testified that Donna initially wanted joint custody of the children so that they would visit her during the summers but that he had talked her out of that.

James later commenced divorce proceedings against Donna, which culminated in the entry of a decree on May 25, 1982, granting him a divorce. Among other things, the decree provided that James should have the care, custody, and control of the two children, "subject to reasonable visitation privileges by the Defendant, *only upon approval of the Court.*" The italicized portion was added to the typewritten portion of the decree by the trial judge in his own handwriting, as witnessed by his signature and date.

In November of 1981, Donna hitch-hiked to Houston, Texas, where she remained until August of 1982, when she returned to Wisconsin.

After Donna left the marital home, James and the children moved from Sioux City to a trailer court near Jefferson, South Dakota. He then moved to a rented house in Elk Point, South Dakota. Neither the Elk Point residence nor the residence at the

trailer court had a telephone. James then moved to a trailer court in North Sioux City, South Dakota. He installed a phone in that residence but requested that the number be unlisted.

Petitioner, Sandra Lee Bellows, married James on May 29, 1982.

Donna sent birthday cards to James, Jr. on his birthday in August of 1981 and 1982. She wrote to James and the children from Texas in August of 1982. Among other things, this letter informed James that Donna wanted to make sure that the children always knew who their real mother was. In this letter she also asked James to send her a copy of the divorce decree. He refused to do so, but advised Donna by letter that she was not entitled to visitation of the children until she obtained a court order permitting her to do so. He also advised her that the children were doing well in school and that they had many friends and a good home. He also advised Donna to ask her attorney for a copy of the divorce decree. Donna obtained a copy of the decree in late September of 1982 after writing to the Union County Clerk of Courts.

Donna wrote to James in October of 1982 asking about the children. The letter contained a message to Candi to the effect that Donna was sure that Candi was doing well in school and that she should be a good girl. The letter also contained a message to James, Jr. asking whether he was being good for his father and telling him to listen to his father.

According to Donna's testimony, she attempted to call James after he had moved to Jefferson, South Dakota, but was advised that the telephone company had no listing for him. She tried on several more occasions to reach James by phone and was advised that his number was unlisted.

During 1982 and 1983, Donna occasionally saw James' mother, who was then living in the same area in Wisconsin, while shopping or at the doctor's office. Donna asked Mrs. Bellows if she had heard from James and inquired about the children. Donna

also asked James' niece in August of 1982 how James, Jr. and Candi were. Donna kept in her possession a photo album of the children and a book in which she from time to time wrote poems to them.

At the time of the final hearing on the petition, March 27, 1984, Donna had been unemployed during the preceding year and was receiving aid for families with dependent children.

Donna had no contact with the children by way of letter or telephone call from October of 1982 until the petition for adoption was served upon her in December of 1983.

At the time this action was tried, SDCL 25-6-4 * provided in pertinent part:

A child cannot be adopted without the consent of the parents, if living, provided that in the following cases consent shall not be necessary:

. . . .

(2) From any parent who has abandoned his or her child for the period of one year; . . . .

■ Whether a parent has abandoned a child within the meaning of SDCL 25-6-4 is a question of fact to be decided by the trial court, a decision that will not be overturned unless the finding is clearly erroneous. *Matter of Adoption of Everett,* 286 N.W.2d 810 (S.D.1979); *In re Adoption of Christofferson,* 89 S.D. 287, 232 N.W.2d 832 (1975).

The standard for determining whether abandonment has occurred was established by this court in *Mastrovich v. Mavric,* 66 S.D. 577, 579, 287 N.W. 97, 97-98 (1939):

To constitute abandonment under our code it must appear by clear and convincing evidence that there has been by the parents a giving-up or total desertion of the minor child. In other words, there must be shown an absolute relinquishment of the custody and control of the minor and thus the laying aside by the parents of all care for it.

* SDCL 25-6-4 was amended in 1984, but that amendment would seem to have no bearing on

the outcome of this case. 1984 S.D.Sess.Laws ch. 188.

*See also Adoption of Ernst,* 318 N.W.2d 353 (S.D.1982); *Matter of Adoption of Everett, supra; In re Adoption of Christofferson, supra.*

In *Christofferson, supra,* we held that in order to support a finding of abandonment the evidence must establish an intent on the part of the parent to abandon and to relinquish parental obligations with respect to a child. We also held that this intent to abandon may be inferred from conduct. In *Everett, supra,* we held that in determining whether intent to abandon is established by the evidence the trial court may consider the subjective statements of the parents in addition to objective factors.

In *Brown v. Warner,* 78 S.D. 647, 653, 107 N.W.2d 1, 4 (1961), this court defined "clear and convincing evidence" as follows:

The measure of proof required by this designation falls somewhere between the rule in ordinary civil cases and the requirement of our criminal procedure, that is, it must be more than a mere preponderance but not beyond a reasonable doubt. It is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegation sought to be established. Evidence need not be voluminous or undisputed to accomplish this.

In *Cromwell v. Hosbrook,* 81 S.D. 324, 329, 134 N.W.2d 777, 780 (1965), we further defined "clear and convincing evidence" as follows:

Its technical meaning has been expressed as "the witnesses must be found to be credible, that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."

■ We conclude that the evidence in the case before us does not support the trial court's determination that there was clear and convincing evidence that Donna had absolutely relinquished the custody

and control of her two children and had laid aside all care for them. True, there were no direct contacts between Donna and the children from October of 1982 until December of 1983, but when viewed in the totality of the circumstances we do not consider this fourteen-month hiatus as sufficient evidence of intent to abandon. Donna left the marital home under conditions of extreme stress. By James' own admission, she left the home in order to avoid further conflict with James in a situation which she had apparently found to be intolerable. Accordingly, her departure was prompted by the best interests of the children and not out of any intent to abandon them. Again by James' own admissions, Donna desired to have joint custody of the children, only to be dissuaded from that desire by James himself.

Although James apparently told Donna about the visitation provisions in the divorce decree, it was not until late September of 1982 that Donna received a copy of the decree itself. Although it may seem a simple enough matter to us lawyers and judges for Donna to have made inquiry of the court regarding her right to visit the children, we must remember that we are dealing here with, by her own admission, a young woman who has had emotional problems and a total lack of financial resources. The record reveals that she had to borrow money to buy a bus ticket to come to the continued hearing on the adoption petition, having been unable to secure funds to attend the hearing on the original date set.

■ In mentioning Donna's emotional and financial problems, it must be kept in mind that we are not talking about her fitness to have custody of the two children. Rather, the issue is whether her legal rights vis-a-vis her children shall be forever terminated. These rights are in the nature of a fundamental liberty interest. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *People in Interest of S.L.H.,* 342 N.W.2d 672 (S.D. 1983). Granted that this fundamental right is neither absolute nor unconditional, *People in Interest of S.L.H., supra; In re*

*N.J.W.*, 273 N.W.2d 134 (S.D.1978); *In re K.D.E.*, 87 S.D. 501, 210 N.W.2d 907 (1973), more is required to support a finding of abandonment than the record in the case before us provides.

The judgment is reversed and the case is remanded to the circuit court with directions to dismiss the petition for adoption.

FOSHEIM, C.J., and MORGAN and HENDERSON, JJ., concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, dissents.

WUEST, Acting Justice (dissenting).

I dissent.

The trial court found Donna abandoned the children for a period of one year. This finding is not clearly erroneous, although abandonment must appear by clear and convincing evidence. Whether Donna intended to abandon these children was a factual matter for the trial court to decide.