Timothy D. MELDRUM, Sr., Individually and as the Biological Parent and Natural Guardian of T.D.M., Jr., Plaintiff and Appellee,

v.

Charles NOVOTNY, Defendant and Appellant,

and

T.D.M., JR., Intervenor.

No. 20791.

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1999.

Decided Sept. 22, 1999.

J.M. Grossenburg, Winner, for appellee.

Rick Johnson of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, for appellant.

Steven R. Smith of Andera & Smith Law Offices, Chamberlain, for intervenor.

KONENKAMP, Justice.

[¶ 1.] This is a child custody dispute between the mother's boyfriend and the biological father. T.M., a nine-year-old, had been living with his mother and her boyfriend for six years. After the mother was killed in an automobile accident, the boyfriend, who had been caring for the child, sought to obtain custody. The circuit court declined to appoint an attorney for the child. Following its decision granting custody to the biological father, the court then granted the child's pro se request for an attorney. The newly appointed attorney moved for a new trial. Although the court concluded that the motion had issues of merit needing to be addressed, it found it could not consider the motion because a notice of appeal had been filed, staying further proceedings. We reverse for a new trial, concluding that the best interests of the child required the appointment of an attorney before the trial, and thus, the circuit court abused its discretion when it failed to appoint one at that time.

### Facts

[¶ 2.] Timothy Dean Meldrum, Sr. and Nancy Jean Meldrum were married in Rock County, Illinois, on June 9, 1988. They had one son, T.M., who was born on October 9, 1988. Two years later, Nancy quit her day job to become an exotic dancer. When her performances required travel far from home, T.M. always stayed with his father. Nancy's appearances took her to Winner, South Dakota, where she met Chuck Novotny, a local rancher. The two began living together in a romantic relationship in 1991, before T.M.'s fourth birthday.

[¶ 3.] In 1992, as she and Novotny returned from a dancing engagement in Boston, Nancy stopped at Meldrum's home and took T.M. with her to South Dakota. Meldrum did not contest this arrangement, believing his son would be well taken care of. Meldrum remained in Illinois, where he worked as a diesel mechanic. When Nancy periodically returned to Illinois on dancing engagements, she took T.M. with her to see his father. Meldrum's mother and father, sister, and several aunts all lived nearby and saw T.M. on some of these occasions. This extended family sent cards and letters to T.M. after he moved to South Dakota.

[¶ 4.] Nancy and Novotny had a son, Z.N., born on August 3, 1993. While Nancy was away on her dancing performances, sometimes for six weeks, Novotny cared for both T.M. and Z.N. His mother, Dorothy Novotny, helped to look after the two children during the day. When T.M. started school, Dorothy would care for him after class. Novotny checked in on the children periodically during the day, at lunch, and usually at dinner. Novotny provided much of the daily care of the two children, and saw to their medical and educational needs. When he started school, T.M. was diagnosed with Attention Deficit and Hyperactivity Disorder (ADHD) and was receiving counseling, as well as medical treatment. Novotny oversaw T.M.'s treatment.

[¶ 5.] In 1995, Novotny sought custody of both T.M. and Z.N. On December 26, 1995, Judge Kathleen Trandahl entered an Interim Custody and Visitation Order, granting to Novotny the physical care, custody, and control of T.M. and Z.N., subject to reasonable visitation with Nancy. Meldrum filed an affidavit of natural father in this proceeding, in which he claimed to be the father of both T.M. and

Z.N., and sought custody of both children in the event that Novotny rather than Nancy was awarded custody. The custody proceeding was not pursued.

[¶ 6.] Nancy obtained a divorce from Meldrum in December 1997. By stipulation, Nancy received T.M.'s physical custody, with Meldrum having reasonable visitation. Meldrum's child support was set based on the minimum wage. Meldrum testified that Nancy was self-reliant and refused his support payments. Meldrum has since remarried and has a child with his second wife. Novotny and Nancy were never married. Nancy was killed in an automobile accident in Tripp County, South Dakota, on May 3, 1998.

[¶ 7.] In June, Meldrum brought a habeas corpus action, seeking the custody of T.M. An Order to Show Cause was issued, setting the matter for hearing in August. In a motion hearing just before trial, Novotny's counsel requested that a psychologist be assigned to investigate the matter and that an attorney be appointed for T.M. before any determination on who should receive custody. The court ruled that there was no reason to appoint either a psychologist or an attorney for T.M. at that time.

[¶ 8.] After an evidentiary hearing, the court awarded T.M. to his natural father, Meldrum. T.M. submitted, pro se, a Motion of Real Party in Interest for Re-Hearing, Stay, and Appointment of Counsel. The court granted the child's motion for an attorney. T.M.'s counsel then moved for a new trial. The court decided that it lacked jurisdiction to hear arguments on the issue because Novotny had served his notice of appeal. In its order, the court specifically found that "but for the filing of the [appeal] issues of merit" needed to be addressed in the child's motion.*

[¶ 9.] Both Novotny and the child contend that the circuit court erred in not

appointing an attorney for T.M. before the hearing. Novotny also argues that extraordinary circumstances entitle him to have the child's custody. As we reverse and remand on the issue of appointment of an attorney, we do not reach any other question.

## Analysis and Decision

[¶ 10.] At every stage in child custody proceedings "our brightest beacon" is the best interest of the child. *In re C.V.*, 1998 SD 47, ¶ 11, 579 N.W.2d 17, 21. This standard applies when considering whether a child requires an attorney. SDCL 25-4-45.4 provides in part that "the court *may* appoint counsel for any child involved in any divorce or custody proceeding, in which the child is alleged to be neglected or abused, or if a parent, guardian or custodian requests counsel be appointed in such proceeding and if the court determines that it is in the *best interest of the child* to have counsel appointed for the child." (Emphasis added.) Although the use of the word "may" in this statute makes it clear that the appointment of an attorney for a child is within the sound discretion of the trial judge, such discretion is still guided by what is best for the child.

[¶ 11.] When reviewing whether a court has abused its discretion, we do not decide whether we would have made the same ruling, but only if a judicial mind could have made a similar decision in view of the law and the circumstances. *Johnson v. Johnson*, 468 N.W.2d 648, 650 (S.D. 1991). "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Paradeis v. Paradeis*, 461 N.W.2d 135, 137 (S.D.1990) (citing *Bradeen v. Bradeen*, 430 N.W.2d 87, 91 (S.D.1988)).

---

* This would have been a good case for counsel to have filed with the Clerk of the Supreme Court a motion for an order to show cause

why the case should not be remanded for consideration of the new trial motion.

[¶ 12.] Under the unique circumstances of this case, we conclude the circuit court abused its discretion in not appointing an attorney for the child before proceeding with an evidentiary hearing, a hearing that would permanently determine the child's future. This child had no representation at trial in a case where his mother, his primary custodian, died, and his father had no regular contact with him for years. For T.M. to have had an opportunity for effective representation, his attorney should have been appointed beforehand. We reverse and remand for a new trial so that the circuit court can consider all the evidence, including the issues of merit the court found needed to be addressed.

[¶ 13.] Reversed and remanded for a new trial.

[¶ 14.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.